**E-Filed 12/7/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JULIE SCOTT,<br><br>        Plaintiff,<br><br>    v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,<br><br>        Defendants. | Case Number C 05-275 JF (PVT)<br><br>ORDER[1] (1) GRANTING UNUM'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING THE LTD PLAN'S MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING IN PART SCOTT'S CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST THE LTD PLAN<br><br>[re: doc. nos. 49, 58] |

      The parties have filed cross-motions for summary judgment.  The Court has considered the briefing of the parties as well as the oral arguments presented at the hearing on December 1, 2006.  For the reasons discussed below, the motion of Defendant Unum Life Insurance Company of America ("Unum") will be granted, the motion of Defendant Cisco Systems, Inc. Long-Term Disability Plan ("the LTD Plan") will be denied, and the cross-motion of Plaintiff Julie Scott ("Scott") will be granted in part against the LTD Plan.

---

    [1] This disposition is not designated for publication and may not be cited.

# I. BACKGROUND

This is an ERISA[2] action arising out of the denial of Scott's claim for long term disability benefits under the LTD Plan. Scott worked as a marketing programs manager for Cisco Systems, Inc. ("Cisco") beginning in 1999. One of her primary tasks was creating and executing an ongoing national and international seminar program about technical support for networking products. Scott also created instructional videos on Cisco technical support tools. She regularly worked fifty to seventy hours per week in order to meet tight deadlines. Such work involved frequent travel, standing and walking for several hours every day, often carrying luggage and presentation materials, and public speaking. Scott received the highest ratings in her performance reviews and was voted "most valuable member of the marketing team" by the TAC Web organization, consisting of approximately one hundred Web engineers, technical writers and marketing team members.

In 1996, prior to starting work at Cisco, Scott was diagnosed with fibromyalgia. "Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression." *Lang v. Long-Term Disability Plan of Sponser Applied Remote Tech., Inc.*, 125 F.3d 794, 796 (9th Cir. 1997). The disease also has been described as follows:

> This syndrome, formerly called fibrositis, has traditionally been used for an ill-defined, poorly understood set of symptoms, consisting of aching pain and stiffness in one or several parts of the body. As we have previously explained, fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The 'consensus' construct of fibromyalgia identifies the syndrome as associated with generalized pain and multiple painful regions . . . Sleep disturbance, fatigue, and stiffness are the central symptoms, though not all are present in all patients. The only symptom that discriminates between it and other syndromes and diseases is multiple tender spots, which we have said were eighteen fixed locations on the body that when pressed firmly cause the patient to flinch. The diagnosis is now based on patient reports of a history of pain in five parts of the body, and patient reports of pain when at least 11 of 18 points cause pain when palpated by the examiner's thumb. Although the Mayo Clinic states that the syndrome is neither

---

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

"progressive" nor "crippling," the symptoms can be worse at some times than others. Objective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia.

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2003) (footnotes omitted). Scott did not work for approximately eighteen months but eventually was able to return to full-time employment. As described above, she obtained employment with Cisco and worked successfully at a demanding job until giving birth to her first child in January 2001. Scott claims that at that point the pain and fatigue that she had attributed to pregnancy became completely unmanageable. She and her husband hired full-time childcare and housecleaning help, but her symptoms did not abate. She applied for short-term disability benefits under Cisco's short term disability plan, also known as the Voluntary Disability Insurance plan ("the VDI Plan"). That plan was administered by Unum but funded by Cisco. Unum approved short term disability benefits through March 30, 2001.

In April 2001, Scott saw Dr. Nicole Barry, who ruled out other diseases and concluded that Scott's symptoms were the result of fibromyalgia. In June 2001, upon Dr. Barry's recommendation, Scott began seeing Dr. Lawrence Epstein, and internist experienced in fibromyalgia treatment. In July 2001, Scott contacted Unum and requested an extension of short term disability benefits based upon fibromyalgia. Unum initially denied the requested extension. Scott returned to work on a part time basis in October 2001, working approximately twenty-four hours per week in a modified position primarily out of her home. She continued to pursue her claim for short term disability benefits, and in April 2002 Unum finally approved an extension of short term disability benefits through January 8, 2002, which exhausted the short term benefits available under the VDI Plan. Unum then referred Scott to its long term disability department for consideration of eligibility for further benefits.

Under the LTD Plan, administered and insured by Unum, payment of long term disability benefits commences after the claimant has been disabled for 180 days ("the Elimination Period"). Accordingly, there is a six-month overlap of eligibility for short term disability benefits under the VDI Plan and eligibility for long term disability benefits under the LTD Plan. A claimant is disabled for purposes of receiving long term disability benefits when the claimant is "limited

3

from performing the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury" and the claimant has a resulting loss of 20% or more in indexed monthly earnings. Administrative Record, "AR," 34. After twenty-four months of payments, the definition of disability changes, and a claimant is considered disabled when "due to the same sickness or injury, [the claimant] is unable to perform the duties of any gainful occupation for which [the claimant is] reasonably fitted by education, training or experience." *Id.* Long term disability benefits are available when the claimant is disabled but is working part-time, according to a formula set forth in the Unum policy. AR 35-36. After twenty-four months of payments, benefits are terminated if and when the claimant earns more than 60% of pre-disability earnings. AR 36.

Based upon Scott's alleged disability date of January 2001, she became eligible for long term disability benefits after the expiration of the Elimination Period in July 2001 (assuming she otherwise qualified for benefits under the LTD Plan). As noted above, however, Scott was not referred to Unum's long term disability department until April 2002. At that time, although Unum had approved the exhaustion of short term disability benefits based upon fibromyalgia, Unum's long term disability department began a new investigation into Scott's fibromyalgia claim. Five months later, in September 2002, Unum still had not concluded its investigation. At that time, however, Unum notified Scott that it would begin paying long-term disability benefits retroactive to July 2001 "under a reservation of rights" while it continued to investigate her claim. Because Unum had not yet determined liability, Unum paid Scott on a monthly basis but fourteen months in arrears. That is, Unum paid Scott's July 2001 benefit in September 2002, her August 2001 benefit in October 2002, and so on.

In November 2002, Scott protested this method of paying past due benefits. On January 23, 2003, Unum sent Scott's attorney a letter stating that Unum was denying the claim for long term disability benefits under the policy's "own occupation" definition of disability. Scott's request for review was denied in July 2003.

In December 2003, Scott increased her work hours to 75% time, making her ineligible for further long term disability benefits. She claims past due long term disability benefits for the

4

period prior to December 2003.

Scott's sole remaining claim is a claim for past due benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which section permits a plan participant to bring a civil action to recover benefits due under the terms of the plan. The parties have stipulated to this Court's *de novo* review of the denial of benefits.

## II. DISCUSSION

**A.     Unum**

As an initial matter, Scott asserts a § 502(a)(1)(B) claim against both the LTD Plan and against Unum. Unum seeks summary judgment on the ground that it is not a proper party to the claim under Ninth Circuit law. Scott sued Unum on the theory that Unum functioned as the LTD Plan's administrator, although Unum was not formally named as the LTD Plan administrator. Scott concedes that under recent Ninth Circuit authority, a § 502(a)(1)(B) claim may be brought only against the plan and the entity formally named as the plan administrator. *See Ford v. MCI Communications Corp. Health & Welfare Plan*, 399 F.3d 1076, 1081-82 (9th Cir. 2005). Accordingly, Scott does not oppose Unum's motion for summary judgment. The Court will grant Unum's motion for summary judgment.

**B.     The LTD Plan**

With respect to the LTD Plan, the question before the Court is whether the evidence in the record demonstrates that Scott was disabled from January 2001 through November 2003 under the relevant policy definitions. As noted above, Scott initially is considered disabled under the LTD Plan if she is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury" and has a resulting loss of 20% or more in indexed monthly earnings. AR 34. After the first twenty-four months of long term disability, the definition of disability changes, and a claimant is considered disabled when "due to the same sickness or injury, [the claimant] is unable to perform the duties of any gainful occupation for which [the claimant is] reasonably fitted by education, training or experience." *Id.* Here, the "any occupation" definition is applicable for the four-month period of August 2003 through November 2003.

### 1. Own Occupation

The reports of three of Scott's treating physicians support her claim that she was disabled under the "own occupation" definition. Scott began seeing Dr. Epstein in June 2001. He concluded that she had a characteristic history of fibromyalgia, including "severe fatigue, chronic pain, hypersensitivity to pain, sleep disturbance, sensitivity amplification, irritable bowel, urinary frequency, and problems with short-term memory." In a physical examination, he found a positive tender point response on sixteen of eighteen tender points. He stated that Scott always arrived at his office tired, with circles under her eyes and continuous reports of pain and fatigue. He found her reports credible and stated that he was impressed with her determination to return to work despite her health problems. In April 2003, he stated that Scott could not perform many of the functions of her former position as a marketing programs manager. Specifically, he found that Scott could not function in a fast-paced, high stress environment, and could not travel, keep a steady schedule or type for extended periods. He found that Scott could not work more than twenty-four hours per week.

Dr. Graeme Shaw treated Scott in 2003, and reported that she suffered from chronic fatigue and fibromyalgia symptoms, including chronic pain that rendered her nearly bedridden for two days out of the week, short-term memory loss and poor concentration. He stated specifically that Scott could not return to the high paced activities, multi-tasking, traveling and long hours of her occupation as marketing programs manager.

Dr. Mark Rosen treated Scott from November 2001 through June 2002. He found that Scott had tissue abnormalities suggesting tissue dysfunction in line with her complaints of disabling pain and fatigue. He stated specifically that Scott could not perform many of the activities associated with her job as a marketing programs manager, that she could not maintain any full-time employment, and that she could work part time only if permitted flexible hours.

In addition to the opinions of Scott's treating physicians, Scott points out that Unum found her disabled under the VDI Plan from January 2001 through January 2002, under a *stricter* definition of disability. Under the VDI Plan, a claimant is disabled if she is "unable to perform *all* the material duties of" her occupation. Renaker Decl., Exh. 1, P1119. Under the LTD Plan, a

6

claimant is disabled if she is "limited from performing the material and substantial duties of" her occupation. AR 34. Comparing these definitions, the Court is at a loss to discern how Scott could have been disabled under the former definition but not under the latter. In their papers, Defendants assert that Unum approved Scott's claim for short term disability benefits *not* because she actually was disabled but rather "to be of service to Cisco and Ms. Scott." However, Scott cites to the opinion of an outside consultant hired by Unum at the time, who advised Unum in an email as follows:

> [T]here is a difference of medical opinion between the Unum medical consultant and [Ms. Scott's] five treating physicians. There is no way that you can sustain a denial unless you can come up with an IME or substantial convincing evidence to show that all of her doctors are wrong.

AR 151-52. Given this evidence, Unum's contention that it approved short term disability benefits simply to accommodate Cisco and Scott is unpersuasive, particularly since Unum does not cite any *evidence* in support of its contention.

      Unum did not contact Scott's treating physicians or conduct any sort of follow-up with them. Rather, Unum based its denial of long term disability benefits on a functional capacity evaluation that was performed at its request in October 2002. The evaluation was conducted by a company called HealthSouth, and specifically by Darryl Griffiths, MA OTR/L. Griffiths examined Scott over two days, and concluded that she demonstrated "self-limiting" behaviors and inconsistent effort on several of the tests, suggesting possible symptom magnification behavior. In other words, Griffiths essentially stated that Scott might have been malingering. After reviewing the functional capacity evaluation, an Unum medical consultant, Dr. Michael Randall, concluded that Scott had the capacity to work full time. Notably, neither Griffiths nor Dr. Randall addressed the question of whether Scott could perform her "own occupation" as a marketing programs manager. Unum nonetheless denied Scott's claim for long term disability benefits.

      Scott appealed the decision, and submitted additional information to Unum, including another functional capacity evaluation performed on April 14, 2003 concluding that Scott could not work full time, and responses to the HealthSouth evaluation by Drs. Epstein and Shaw. Both

doctors stated their unequivocal beliefs that Scott is not a malingerer, and that the pain and fatigue symptoms she had been reporting for years were genuine. Both doctors also noted that the nature of fibromyalgia is such that symptoms fluctuate from day to day, and concluded that the HealthSouth evaluation did not support a conclusion that Scott was able to work full time.

The Court concludes that based upon this record no reasonable trier of fact could find that Scott was able to perform her own occupation during the relevant period. *See* Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (holding that summary judgment should be granted if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law). Her diagnosis of fibromyalgia is undisputed. Her treating physicians opined in no uncertain terms that Scott could not perform her occupation, and provided reasons in support of those opinions. The HealthSouth evaluation concluding that Scott can perform full time work does not address whether she can perform *her own occupation*, but appears to conclude that she can perform some hypothetical full time position. That conclusion is irrelevant.

Even if the Court were to conclude that triable issues of material fact preclude summary judgment under Rule 56, the Court nonetheless would grant judgment for Scott as to the period governed by the "own occupation" definition. A district court reviewing a denial of benefits *de novo* may try the case on the record that the administrator had before it. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999). Both parties agree that this is the appropriate standard. Having reviewed the record that was before Unum, including all of the documents discussed above, the Court concludes that were it to conduct a bench trial in this matter it would grant judgment for Scott as to the period governed by the "own occupation" definition.

**2.  Any Occupation**

As noted above, the "any occupation" definition is applicable for the four-month period of August 2003 through November 2003. Defendants argue that, because Unum denied long term disability benefits under the "own occupation" definition, Unum never reached the "any occupation" definition. Defendants request that Scott's claim for benefits for the period August 2003 through November 2003 be remanded for a determination under the "any occupation"

definition. Scott argues that the Court properly can determine disability under the "any occupation" definition even though the administrator never addressed this issue.

In *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996), the long term disability benefits plan provided benefits for the first twenty-four months if the claimant was disabled under an "own occupation" standard, and provided benefits thereafter if the claimant was disabled under an "any occupation" standard. The plan denied benefits based upon a determination that the claimant did not meet the "own occupation" standard. The district court concluded that the plan administrator had construed the "own occupation" plan provision erroneously, concluded further that under the correct construction of the "own occupation" standard the claimant was entitled to benefits, and remanded for payment of benefits through the date of the decision. The appellate court agreed that the administrator had construed the "own occupation" standard erroneously, but concluded that the appropriate remedy was remand to the administrator for a determination of disability under the correct construction. *Id.* at 461. The appellate court also concluded that the district court had erred in ordering payment of benefits beyond the initial twenty-four month disability period, because the plan had never considered her eligibility for benefits under the "any occupation" standard and there was nothing in the administrative record regarding disability under that standard. *Id.* at 460.

Because Unum based its denial of benefits on its determination that Scott did not meet the "own occupation" standard, Unum never considered whether Scott met the "any occupation" standard that was applicable after the first twenty-four months of long term disability. Accordingly, the Court concludes that the appropriate remedy is remand for a determination of disability under the "any occupation" standard for the period August 2003 through November 2003.

## IV. ORDER

(1) Unum's motion for summary judgment is GRANTED;

(2) The LTD Plan's motion for summary judgment is DENIED;

(3) Scott's cross-motion for summary judgment is GRANTED IN PART as set forth herein; and

(4) The Clerk of the Court shall close the file.

DATED: 12/7/06

_____
JEREMY FOGEL
United States District Judge

Case No. C 05-275 JF (PVT)
ORDER (1) GRANTING UNUM'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

1  This Order was served on the following persons:

3  Horace W. Green    horaceg@lifehealthlaw.com, zhongl@lifehealthlaw.com

4  Claire Kennedy-Wilkins    ckwilkins@lewisfeinberg.com, celder@lewisfeinberg.com; vmartin@lewisfeinberg.com

6  Teresa S. Renaker    trenaker@lewisfeinberg.com, celder@lewisfeinberg.com; vmartin@lewisfeinberg.com

7  Joanne M. Ryan    joanner@lifehealthlaw.com, zhongl@lifehealthlaw.com, ; markh@lifehealthlaw.com, ; horaceg@lifehealthlaw.com

9  Cassie Springer-Sullivan    cssullivan@lewisfeinberg.com, vmartin@lewisfeinberg.com; celder@lewisfeinberg.com

Case No. C 05-275 JF (PVT)
ORDER (1) GRANTING UNUM'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)